UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED SATES OF AMERICA :
:
V. : C.R.NO.: 05-83 ML
:
JOHN BARNES :

**DEFENDANT'S MOTION FOR A *FRANKS* HEARING**

Now comes the defendant, John Barnes, by and through counsel and moves this Honorable Court for the conduct of a hearing, pursuant to the decision of the United States Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978).

In support of this motion defendant submits an accompanying memorandum.

Defendant,
John Barnes,
By his Attorney,

Thomas F. Connors
454 Broadway
Providence RI 02909
Tel 401.751-3900
Fax 401.751-8983

CERTIFICATION

I hereby certify that on the first day of November 2005 I hand delivered a copy of the within motion to Assistant United States Attorney Mary E. Rogers.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | C.R.NO.: 05-83 ML |
| | : | |
| JOHN BARNES | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A *FRANKS* HEARING**

I. Introduction

Based on a statement contained in a warrant affidavit (see attached), John Barnes suspects that Albert Faella recklessly disregarded the truth in violation of Mr. Barnes' rights under the Fourth Amendment. John Barnes suspects that detective Albert Faella, a twenty year member of the Johnston Police Department, recklessly disregarded the truth when he stated under oath at an ex parte proceeding in support of the issuance of a search warrant that "[o]n 05/12/2005, your affiant was contacted by the CI who said that the CI was just inside Barnes house and observed a large quantity of crack cocaine Barnes had placed inside a coffee can." These thirty-four words lie at the center of this motion and memorandum.

Because false or reckless material statements made under oath by law enforcement officials strike at the heart of the integrity of our criminal justice system, federal

decisional law has recognized a defendant's right under the Fourth Amendment, upon a substantial preliminary showing, to challenge and expose a false basis of a search warrant and suppress the evidence so illegally obtained. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978).

For the reasons expressed in this memorandum, John Barnes asks this court to conduct a *Franks* evidentiary hearing in order to challenge further and disprove the presumed veracity of the warrant affidavit thereby protecting the integrity and meaning of the probable cause requirement of the Fourth Amendment.

## II. Facts and Travel

On May 13, 2005 Detective Faella issued a three-page eight-paragraph affidavit before Judge Albert DeRobbio, Chief Judge of the Rhode Island District Court, in support of a search warrant to be executed on 91 Whatcheer Avenue, Providence, Rhode Island, the alleged residence of John Barnes. On the basis of Detective Faella's vague and unchallenged affidavit Judge DeRobbio issued the search warrant and, according to police reports, at approximately 2000 hours the warrant was executed. Police physical evidence inventory reports allege that controlled substances were found on the premises. A Providence Police

Department arrest report indicates that John Barnes was arrested later that same day, May 13, 2005, at 22:13 hours.

III. Standard of Review

The standard of review controlling the threshold issue of whether any particular defendant has a right to a *Franks* hearing lies somewhere between mere denials of the assertions contained within the warrant affidavit on the one hand, and proof of deliberate falsity or reckless disregard for the truth by a preponderance of the evidence on the other hand. This conclusion follows the sensible *Franks* holding that mere unsubstantiated allegations of falsity or reckless disregard for the truth are insufficient, and the preponderance standard applies to any eventual *Franks* hearing. Accordingly, the threshold showing required to get to a *Franks* hearing necessarily falls below a preponderance standard and above mere denials.

In *Franks*, Justice Blackmun, writing for the Court, articulated the standard as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false;

> and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statement of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to this hearing.

Franks at 171.

Parsing Justice Blackmun's language above may result in the recognition of the following six elements or criteria comprising the requisite substantial preliminary showing a defendant must make in order to get to a *Franks* hearing:

1. Allegation of deliberate falsehood or reckless disregard of truth;
2. Identify specific false or reckless language;
3. Falsity or Recklessness by government affiant;
4. Affidavit lacks probable cause absent challenged assertion;
5. Offer of proof;
6. Reliable statements submitted or absence explained.

By satisfying each of these six elements a defendant will successfully rebut the presumption of veracity ordinarily - and rightly - applied to law enforcement officials as well as the related presumption of validity of the search warrant affidavits they issue. Applying the above six elements to the case of John Barnes will clearly show that a *Franks* hearing is not only justified but necessary.

IV. Application of Standard to the Facts

**1. Allegation of deliberate falsehood or reckless disregard of truth.**

This element has been satisfied by the introduction of this memorandum.

**2. Identify specific false or reckless language.**

This element has been satisfied by the introduction of this memorandum.

**3. Falsity or Recklessness by government affiant.**

John Barnes asserts that Detective Faella recklessly disregarded the truth and was not merely repeating unknowingly a falsehood supplied to him by another nongovernmental person.

**4. Affidavit lacks probable cause absent challenged assertion.**

The only allegation of a nexus between a controlled substance and 91 Whatcheer Avenue occurs in the challenged

sentence in the sixth paragraph of Detective Faella's affidavit. Accordingly, absent that sentence the affidavit not only fails to establish probable cause to search the location but collapses completely as bereft of any connection whatsoever between 91 Whatcheer Avenue and any suspicious activity. In other words, these thirty-four words form the lynchpin of probable cause in this case. Remove these words and probable cause evaporates. Conversely, make up these words and inject them into an otherwise truthful - yet unavailing - affidavit and an incomplete investigation will magically transform into a free pass to search the alleged residence of any person suspected of suspicious activity. Just say with a suspiciously minimal level of detail that a confidential informant stated they saw controlled substances at the location and probable cause, on the face of the affidavit, appears. It's that easy. However, it's only that easy if the defendant is not allowed to challenge the false or reckless statement at a *Franks* hearing.

**5. Offer of Proof**

John Barnes' offer of proof of recklessness consists of taped statements addressed in the next section of the memorandum as well as a combination of factual and logical inconsistencies in Detective Faella's affidavit and other

police reports. First, the logical inconsistencies are as follows:

The substantive portion of Detective Faella's affidavit begins in the third paragraph which states that "on 04/27/2005, your affiant received information from a reliable and confidential informant (CI) who has supplied information in the past, which has lead to the arrest of numerous individuals for violations of the Controlled Substance Act." This paragraph goes on to state that the CI stated the John Barnes lives at 91 Whatcheer Avenue and "is selling large quantities of cocaine in Johnston" and that the CI "has been in the residence on many occasions."

These assertions are important in showing at least two logical inconsistencies: first, if the CI has a reliable track record, why would the police wait one entire day after the CI allegedly stated that they observed "a large quantity of crack cocaine Barnes had placed in a coffee can?" The affidavit states that while the CI allegedly made this observation on 5-12-05, the police waited until the next day 5-13-05 until after they had allegedly conducted a second controlled buy - the first controlled buy allegedly having occurred on 5-5-05 - with the defendant. By stating that the CI was already reliable as of 4-27-05 Detective Faella's decision to attempt another

controlled buy following the alleged observance of cocaine at 91 Whatcheer Avenue could not have been motivated by a desire to bolster the credibility of a not yet proven CI. Moreover, this decision would seem to have placed unnecessarily the police in a potentially dangerous situation.

A second logical inconsistency arising out of the assertions contained in Detective Faella's affidavit concerns the utter lack of detail regarding precisely what was observed at 91 Whatcheer Avenue on 5-12-05 and the surrounding circumstances. Was John Barnes at 91 Whatcheer Avenue when the CI was alleged to have been there while observing cocaine in a coffee can? What is the basis for knowing that John Barnes had placed cocaine in the coffee can? We don't know because Detective Faella did not bother to include any of those details in his affidavit. Detective Faella indicates that he was contacted by the CI on 5-12-05. How was that contact made? By telephone? In person? We don't know because Detective Faella failed to include those types of details which would imbue the affidavit with credibility crucial to establishing a truthful showing of probable cause.

Certainly, a CI who had been to 91 Whatcheer Avenue "on numerous occasions" could easily have supplied many

details that the officers could have confirmed following the execution of the search warrant thereby tying together the pre-search assertions by the CI with the post-search findings of the police. For instance, what type of furniture was in the house? What type of flooring existed within the building? Were there any distinguishing features that would clearly show that the CI was in fact familiar with the location? The utter lack of this type of detail suggests strongly that no CI observed cocaine in a coffee can at 91 Whatcheer Avenue on 5-12-05.

In addition to these logical inconsistencies, a related factual consistency arises. Specifically, the one and only piece of detailed information supplied by Detective Faella's thirty-four word sentence, the statement that the cocaine was in a coffee can, was not borne out or confirmed by the subsequent search. At least three Johnston police officers, one of whom used a certified narcotics detection dog, and a Providence police narcotics task force executed the search warrant. After this thorough search of the entire premises the police did not report finding a single coffee can, merely one day following the alleged observance by a CI of cocaine in a coffee can. The police say they found a red dish but a red dish cannot be confused with a coffee can. What happened to the coffee can? That

unanswered question alone makes the thirty-four word sentence highly suspicious.

If Detective Faella's challenged statement were true he almost certainly would have ascertained a single detail from the CI and included it in his affidavit so as to confirm and support the veracity of the statement. For instance, what color was the coffee can? What brand of coffee did the can indicate? Maxwell House? Folgers? Probably for marketing purposes, these aspects of a coffee can typically are conspicuous and easy to discern, not hidden or difficult to detect. This level of detail would have been so easy to collect and so powerful in supporting the veracity of the challenged statement that its omission, conversely, casts great doubt as to whether this coffee can observance ever occurred.

**6. Reliable statements submitted or absence explained.**

In addition to Detective Faella, another person known as Cathy Alani or Rassass lies at the center of the issue raised by this motion. Ms. Alani is reported to reside at 995 Atwood Avenue, Johnston RI where two controlled buys of cocaine are alleged to have occurred between John Barnes and Ms. Alani. Although he does not identify Ms. Alani by name, Detective Faella describes in his affidavit that two controlled buys occurred at 995 Atwood Avenue on 5-5-05 and

5-13-05, the day the challenged search warrant was executed and John Barnes was arrested.

Based upon a consensual tape-recorded interview with Ms. Alani, the tape of which is now in possession of defense counsel, as well as police narratives, John Barnes believes that Ms. Alani is the CI referenced in Detective Faella's affidavit. Johnston Detective Alan Ross stated in a supplemental narrative report (see attached) that Ms. Alani, prior to the issuance of Detective Faella's affidavit, had agreed to cooperate with police. It is suspected that the police attempted to camouflage Ms. Alani's identity as the CI. This sort of attempted trickery provides further support for the necessity of a *Franks* hearing during which defense counsel as well as the court would have an opportunity to sort out whether such deceptive practices have run afoul of a defendant's constitutional rights.

Ms. Alani states on tape that she participated in a controlled buy of cocaine from John Barnes. Detective Faella's affidavit speaks of only one CI. This suggests strongly that Ms. Alani is the CI. Most importantly, Ms. Alani on the tape denies being at 91 Whatcheer on 5-12-05 as suggested by Detective Faella. Furthermore, Ms. Alani

stated that she had never seen any cocaine at any time at 91 Whatcheer Avenue.

Ms. Alani was interviewed while incarcerated and since that time has been released. At this time her whereabouts are unclear. Defense counsel would, however, provide the court and the prosecution copies of the tape-recorded interview.

IV. Judicial Economy and Fundamental Fairness

The interests of judicial economy and fundamental fairness would be served by the conducting of a *Franks* hearing in this case. The main witness at the hearing would be Detective Faella. He would be asked, in part, many of the questions raised by this memorandum. Because the focus of this memorandum is very narrow - one thirty-four word sentence in the affidavit - the hearing would not take long, especially when compared to the time it would take to conduct a full trial of this case on the merits. Ms. Alani may or may not be available or willing to testify at a *Franks* hearing, but in the event she would be available and willing, her testimony would take even less time than that of Detective Faella.

If the assertions contained within this memorandum are confirmed at a *Franks* hearing all evidence seized from 91 Whatcheer Avenue would be suppressed and the provable

charges would diminish dramatically, thereby making a full trial on the merits much less likely. If, on the other hand, the court, following a *Franks* hearing, were to conclude that Detective Faella's affidavit established a truthful showing of probable cause, the case would proceed to trial having been cleansed of the sort of doubt and uncertainty regarding the veracity of a law enforcement official's sworn statement that, as stated earlier, strikes at the heart and meaning of the probable cause requirement of the Fourth Amendment. This prophylactic approach is not only in the interest of a defendant but also in the interests of the court and honest prosecutions.

Regarding the issue of fundamental fairness, two aspects of this issue are noteworthy. First, as the court knows, the application for a search warrant is necessarily an ex parte proceeding. The defendant has no opportunity to challenge contemporaneously the assertions contained within a search warrant affidavit. Fairness requires that a defendant be afforded such an opportunity before having to proceed to trial.

Second, as the use of confidential informants seems to grow, a real risk of police trickery, deception and falsity emerges. Where one vague, mysterious and unconfirmed sentence in a search warrant affidavit forms the sole basis

to invades someone's alleged home, the most private of environs protected by the Fourth Amendment, the courts should strive to demonstrate a corresponding willingness to allow defendants an opportunity to explore in detail such a powerful yet bare statement.

The combination of the use of an alleged confidential informant in this case with the ex parte nature of a search warrant application gives the prosecution huge advantages in rooting out criminal activity. These prosecutorial tools, by themselves, do not unfairly burden defendants. However, when a defendant raises specific facts and reasons that suggest that these tools have been abused, balance and fairness require a focused examination of the issue in the form, in this case, of a *Franks* hearing.

V. Conclusion

Having made a substantial preliminary showing that the elements of a *Franks* hearing predicate have been satisfied, and having clearly done more than merely denying the assertions of Detective Faella's affidavit, John Barnes respectfully requests that the court grant his motion to conduct a *Franks* hearing.

Defendant,
John Barnes,
By his Attorney,

Thomas F. Connors
454 Broadway
Providence RI 02909
Tel 401.751-3900
Fax 401.751-8983