IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 05-083ML |
| | ) | |
| JOHN BARNES | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR A DOWNWARD DEPARTURE**

## I. INTRODUCTION

Now comes the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Mary Rogers, Assistant United States Attorney, and hereby responds to defendant's Motion for a Downward Departure.

Defendant posits as "grounds" for a downward departure that his criminal history category is over represented; however, his claim is not supported by the evidence and is not sufficient to justify a sentence below the guideline range.

## III. ARGUMENT

In light of United States v. Booker, 125 S.Ct 738 (2005), the guidelines are no longer mandatory in terms of their application by District Courts. However, Booker dictates that District Courts must consult the guidelines and must take them into account when sentencing. "[T]he guidelines remain part and parcel of the sentencing algorithm." United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Sentencing courts are to "consult [the] Guidelines and take them into account when sentencing." Booker, 125 S.Ct. at 767; see also 18 U.S.C. § 3553(a)(4).

Compliance with Booker necessitates that guidelines calculations be prepared by the United States Probation Officer. It also necessitates that the Court perform an analysis, in the appropriate case, as to whether a downward, or upward, departure is warranted. As was the case previous to the Booker decision, District Courts must also consider those factors set forth in 18 U.S.C. § 3553(a), including: the applicable guidelines range; the nature, seriousness and circumstances of the offense; the history and characteristics of the defendant; protection of the public; deterrence to criminal conduct; the need to promote respect for law and provide for just punishment; the needs of the defendant for educational training, vocational training, medical care and other correctional treatment; the need to avoid unwarranted disparities among similarly situated defendants; and restitution concerns.

In terms of a guidelines analysis, pre-Booker case law still applies. Whether the guidelines are mandatory or advisory, such case law interprets and explains the guidelines. Each guideline applies to a heartland of typical cases. United States v. Carrion-Cruz, 92 F.3d 5, 6 (1st Cir. 1996). A District Court has discretion to depart from the guideline range if the Court finds that there exists an "aggravating or mitigating circumstance of a kind, to a degree, not adequately taken into consideration" by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b). However, not every mitigating or aggravating circumstance warrants a departure. United States v. Bogdan, 284 F.3d 324, 327 (1st Cir. 2002); United States v. Vasquez, 279 F.3d 77, 80 (1st Cir. 2002), and the guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Burns v. United States, 501 U.S. 129, 136-137 (1991).

The guidelines list several factors which are forbidden and cannot be used as grounds

upon which to base a guidelines departure. Other factors are described as "encouraged" or "discouraged." If an encouraged factor is present, the Court may base a guidelines departure decision on that factor if the applicable guideline has not already taken it into consideration. If a discouraged factor is present, or the encouraged factor has already been taken into account by the guideline, the Court may depart under the guidelines only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If the particular factor is not mentioned in the guidelines, the Court must decide whether the factor is sufficient to take the case out of the heartland. A departure based on an unmentioned factor will be "highly infrequent." Koon v. United States, 518 U.S. 81, 96 (1996); United States v. Dethlefs, 123 F.3d 39 (1st Cir. 1997). However, post-Booker, "the fact '[t]hat a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines.'" United States v. Aitoro, 446 F.3d 246, 255 n. 9 (1st Cir. 2006) (quoting United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006)). "Nevertheless, [the Jimenez-Beltre] decision did treat the guidelines as more than just 'one factor among many,' deemed them the proper starting point for post-Booker sentencing, and said that the proponent of a variance had to support it." United States v. Navedo-Concepción, No. 05-2301, slip op. at 5 (1st Cir. June 9, 2006) (quoting United States v. Jimenez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006)).

Barnes appears to be making a claim that his criminal history category is over represented. Yet he himself points out the numerous charges for which the Defendant received no additional criminal history points. His next claim appears to be that, because his prior drug conviction was almost ten years old at the time he committed the instant offense, he deserves

leniency. An application of the factors listed in 18 U.S.C. § 3553(a) does not afford him such relief. Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment ···; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for ··· the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ···; (5) any pertinent policy statement ··· issued by the Sentencing Commission ···; (6) the need to avoid unwarranted sentence disparities among defendants with similar records ···; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) requires the sentencing court to consider a defendant's background and the circumstances of the instant offense. There is nothing in the list of factors that supports a claim that if only the police had caught the Defendant a few months later dealing crack cocaine, the criminal history category would be lower. The Defendant's offense occurred within the guideline range and, absent some extraordinary and compelling reason, should be counted. In this case, an examination of the Defendant's circumstances shows that no compelling circumstances exist to afford the Defendant relief. The Defendant was born in May of 1976. In August of 1991, by the time he was 15 years of age, the Defendant was arrested in possession of a stolen motor vehicle on Route 295. [PSR page 4]. That offense resulted in a juvenile adjudication, and thus was not counted towards the Defendant's criminal history. Less than four months later, in November of 1991, the Defendant was arrested again in a stolen motor vehicle, and again, the juvenile adjudication was not counted towards the Defendant's present criminal history. [PSR pages 4-5]. Then in January of 1992, less than two months later, the

Defendant was arrested yet again in possession of a stolen motor vehicle. This time the Defendant was adjudicated for reckless driving and leaving the scene of an accident that has resulted in personal injury. Yet once again, the Defendant was not assessed any criminal history points towards his present criminal history category. [PSR page 5]. All three of these adjudications occurred before the Defendant was even old enough to drive legally.

In February of 1995, the Defendant was arrested in possession of crack cocaine. The fact pattern describes the circumstances of an individual who was distributing crack cocaine. For this offense the Defendant only received one criminal history point. The Defendant received no additional points for the August 1995 violation of that sentence, nor for the March 1997 violation of his sentence. [PSR pages 5-6]. The Defendant did receive another 2 points for the May 1995 possession of stolen motor vehicle charge for which he was once again presented as a violator. [PSR page 6]. In September of 1995, the Defendant was arrested again for possession of a stolen motor vehicle, and yet again he was presented as a violator. He received 2 additional points towards his criminal history category. [PSR pages 6-7]. The Defendant was arrested and fined for driving without a license in May of 1996. He received no criminal history points. [PSR page 7]. In March of 1997, the Defendant was arrested for driving without a license and obstructing a police officer. The Defendant received one additional history point. And once again the Defendant was declared to be a violator. [PSR page 7]. Just 23 days later the Defendant was arrested for possession of a stolen motor vehicle and driving on a suspended license. The Defendant was presented as a violator and received only one additional criminal history point. [PSR pages 7-8]. The facts of the case show that the Defendant lied about his identity repeatedly to the police upon being stopped and arrested.

Rather than support a claim that the Defendant's criminal history category is over represented, these facts would support an increase in his criminal history category. U.S.S.G. §4A1.3. The Defendant's series of motor vehicle crimes, while unfortunately being a common offense in New England, should not be characterized as minor crimes. They certainly warrant the criminal history points assessed against him. And the violations often involve no contact orders, thus raising the reasonable specter of domestic issues. The Defendant's record also reveals that he is no stranger to trafficking in crack cocaine. In light of the Defendant's prior record, there is no factual basis for a downward departure. In reviewing a particular sentence for reasonableness, the First Circuit stresses the need "for a plausible explanation and a defensible overall result." United States v. Thurston, --- F.3d ----, 2006 WL 2065404 at page 4 (1st Cir.(Mass.), quoting United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc). "We also believe that the guidelines "remain[ ] an important consideration" in sentencing because they "represent[ ] the only integration of the multiple [sentencing] factors [set forth in § 3553(a) ], often reflect past practice, and [bear] the imprimatur of the [Sentencing Commission], [the] expert agency

charged with developing them."" United States v. Thurston, --- F.3d ----, 2006 WL 2065404 at page 4 (1st Cir.(Mass.), quoting United States v. Smith, 445 F.3d 1, 4 (1st Cir.2006).

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT C. CORRENTE
United States Attorney

________________________________
MARY E. ROGERS
Assistant U.S. Attorney

CERTIFICATION

I, the undersigned, do hereby certify that on this, the 7th day of August, 2006, I caused to be served by electronic notification the filing of the Government's Response in Opposition to Defendant's Motion For a Downward Departure to:

Joseph Voccola, Esquire
454 Broadway
Providence, RI 02909

/s/ MARY E. ROGERS
Assistant U.S. Attorney